We have as Rios et al. v. Bayer Corporation et al., Hamby et al. v. Bayer Corporation et al. cases 518-0278, 518-0279. Are counsel ready? We are, Your Honor. Okay, you may proceed. May it please the Court, I'm Virginia Sacks representing Bayer defendants who are appellants here. In these two cases, Hamby and Rios, the plaintiffs have all alleged four tort claims involving the use of a permanent contraceptive device called Eshore. Bayer appeals from the trial court's denial of our motion to dismiss the claims of the 73 out-of-state plaintiffs in Hamby and the 87 out-of-state plaintiffs in Rios on the ground that Illinois courts lack personal jurisdiction over those claims. As Your Honors know, the parties agree that Illinois courts don't have general personal jurisdiction over the Bayer defendants who are not at home in Illinois. The question is whether Illinois courts have specific or case-linked jurisdiction over the claims of plaintiffs who are not Illinois residents. And I hope to demonstrate to you that none of the non-Illinois plaintiffs' four claims has a sufficient link to Illinois to give her courts jurisdiction. And I'd like to start very concretely. First, the non-Illinois plaintiffs make defective manufacturing claims, but they do not claim that their devices were manufactured in Illinois or that they were injured in Illinois. Second, they claim that physicians who implanted their Eshore devices were inadequately trained, but they do not allege that their physicians were trained in Illinois. Third, they claim that Eshore advertising includes misrepresentations and warranties that were breached, but they do not claim to have viewed or received any advertising or warranties in Illinois. And finally, they claim that Bayer's warnings about potential issues with Eshore were legally deficient, but they do not claim they received these warnings in Illinois. Nor did any of the out-of-state plaintiffs receive their Eshore devices in Illinois. Because these non-Illinois plaintiffs didn't have a device implanted in Illinois, didn't receive a device manufactured in Illinois, didn't have doctors trained in Illinois, and didn't see advertising in Illinois, we believe that authority from the U.S. Supreme Court and from Illinois courts requires the conclusion that Illinois courts lack personal jurisdiction over the claims that address these very subjects. And I would start with the Supreme Court's 2017 decision in Bristol-Myers-Swipp because its facts and analysis are very helpful here. In that case, the court considered whether California courts had personal jurisdiction over Bristol-Myers for non-resident store claims about the drug Plavix. The company had five research and development facilities in California. It employed 250 sales representatives in California. It maintained a state government advocacy office in California and sold almost 187 million Plavix pills in California, receiving $900 million in revenues from those sales. The out-of-state plaintiffs asserted court claims under California law, but despite all of these connections between California and Plavix, the Supreme Court held that the California courts lacked specific personal jurisdiction over Bristol-Myers because the non-resident's claims did not have a close enough link to California. They were not prescribed Plavix in California, they did not purchase Plavix in California, and they were not injured by Plavix in California. And in doing so, the Supreme Court rejected a couple of contrary arguments that are similar to those the plaintiffs make here. The court explained it does not matter that other plaintiffs may have been prescribed or received Plavix in California and have alleged that they received similar injuries to those of the non-resident plaintiffs. That similarity did not give the state courts jurisdiction over non-resident's claims. And the court also specifically rejected the argument that the necessary tight connection between a claim and a state is relaxed just because a defendant has other extensive forum contacts. Instead, the court focused on the tight connection required between the state actions and the specific claims at issue. Since Bristol-Myers was decided, many courts, including the District Court in the Southern District of Illinois and District Courts in Missouri, have declined to find personal jurisdiction in cases that are very similar to this one. And we've cited a number of cases to that effect in our brief, and I would ask Your Honors to focus specifically on Dyson and Jordan and Rowland and the Zeralta-related cases in Illinois. The non-Illinois plaintiff's counterargument is that Bayer's marketing, accrediting, and clinical trial activities in Illinois give her courts jurisdiction over their claims. That is true under Bristol-Myers only if the non-Illinois plaintiff's actual claims arise out of or relate to Bayer's Illinois contacts, and they don't. First, the alleged targeting of Illinois cities in a marketing plan. This alleged Bayer activity does not relate to any non-Illinois plaintiff's claims. There is no allegation that non-Illinois plaintiffs or their physicians viewed this marketing or relied on it. And in any event, this argument is foreclosed by Bristol-Myers, where the court rejected the argument that extensive marketing in California created specific jurisdiction over non-California plaintiff's claims. Many courts have made decisions since Bristol-Myers have recognized this, again, including the Dyson decision and the Jordan decision. Claims try to say that marketing in Illinois was the impetus for a national marketing strategy. That is not the kind of connection between a claim and an action in a state that creates personal jurisdiction. It's too attenuated, as Dyson and Jordan explain. A marketing in Illinois would have to be a limited wage to a specific non-Illinois plaintiff's claim, and there is no such allegation here. The next thing plaintiffs rely on is the East Shore Accreditation Program. But again, there is no allegation here that any out-of-state residents, physicians, participated in that program or that such participation caused out-of-state plaintiff's injuries. But this was the East Shore product, and the product that's at issue in this case, correct? Correct. And that does distinguish it from Bristol-Myers, Swift, does it not, where the particular product at issue there was not part of the trials or so forth in California? Your Honor is, I think, referring to the question of the clinical trials argument, which is the next argument that plaintiffs make. They rely on clinical trial activities related to East Shore in Illinois and claim that that's a sufficient link with Illinois to support personal jurisdiction here. But again, there is no link between the plaintiff's specific claims and the clinical trial activities. No non-Illinois plaintiff or her physician is alleged to have participated in or been injured in an Illinois clinical trial. Even to have known about or relied on an Illinois clinical trial or who have been injured because of something that happened in a clinical trial in Illinois, there is no claim in this case challenging the clinical trial activities in Illinois. And that is what would be required for those activities to give rise to personal jurisdiction over plaintiff's claims. Plaintiffs seem to argue that it's sufficient for personal jurisdiction just to allege that there was misconduct in clinical trials and that they led to the approval of the East Shore device. But in essence, this is an argument that so long as any step related to a drug or device's approval occurred in Illinois, that's a close enough link to give the court's jurisdiction over claims related to that device or drug. That kind of relaxed reasoning is completely inconsistent with Bristol-Myers, which requires a tight connection between the activities in this State and the plaintiff's claims. Numerous decisions, including recent decisions by Federal District Judge David Herndon, in Rowland and Bandy, considered and rejected this basis for specific personal jurisdiction in Illinois. In the Xeralto cases, Judge Herndon says allegations that the defendant purposefully targeted Illinois as a location for multiple clinical trials, which formed the foundation for the drug's FDA approval, did not create personal jurisdiction, where the non-Illinois plaintiffs did not claim injuries from ingesting Xeralto in Illinois, and the conduct arising, the conduct creating the claims all occurred elsewhere. This kind of, the clinical trials argument to the court is the kind of remote but-for-judicial causation argument that Illinois courts have also rejected as a sufficient link between the State and a claim for specific jurisdiction. And we've cited this court to Keller and Spartan Motors and RIR, decisions of Illinois courts that say, but-for causation is not good enough, you need legal or proximate causation to give rise to a sufficient link for personal jurisdiction. Plaintiffs rely on a case called MM v. GSK, which is a decision from one of your circuit, from one of your sister districts. It is, of course, not binding on this court, but more importantly, it truly cannot support jurisdiction here for several reasons. First, it was decided before Bristol-Myers, and the court there did not have the benefit of the Supreme Court's Bristol-Myers decision. For example, the court in MM says, the requirement that a claim lies under or relates to a defendant's forum is loose and creates a low threshold. But Bristol-Myers makes absolutely clear that instead the inquiry requires a direct and tight link instead. Significantly, too, in MM, the plaintiff claimed her injuries were the direct result of defendant's failure to disclose the effect of the drug on pregnant women in the clinical trials. That is a much tighter link between the clinical trials and the injuries in that case than we have here. And respectfully, if the MM decision means that there is jurisdiction over any drug or device claim in a State where clinical trials occurred, we believe that decision must be wrong. As noted, both the Supreme Court and the courts in this State reject the claim that this kind of but-for causation of an injury is sufficient for personal jurisdiction. In fact, in the Zeralto cases, plaintiffs made this exact argument based on MM to Judge Herndon, and he did not accept it. Finally, we think it would be clearly unreasonable for Illinois courts to assume personal jurisdiction over Bayer for the out-of-state claimant's claims. Bayer is not at home here, and the plaintiffs and their doctors who are out-of-state are not here, nor are the witnesses or the documents here. Equally, this is not a case where denial of personal jurisdiction would leave these plaintiffs at sea. Each non-Illinois plaintiff has an adequate forum. Many have already availed themselves of another forum where defendants are not contesting the court's personal jurisdiction. In Hanby, at the time we argued the motion to dismiss, 73 of the out-of-state plaintiffs had already filed claims elsewhere. The number is 86 for Rios. In sum, the alleged Illinois activities that out-of-state plaintiffs cite are too attenuated here to support personal jurisdiction over their claims. The elements of plaintiff's claims, including their injury, did not occur in Illinois. Don't distinguish Illinois from dozens of other states where Bayer studied or marketed eShore. Finding specific jurisdiction here based on Bayer's Illinois activities, so removed from plaintiff's specific claims, would turn specific into general jurisdiction. This is in a manner inconsistent with the Supreme Court's recent teachings, and we believe with Illinois jurisprudence, about the requirement of the nature of causation that is sufficient to give rise to a claim. Your Honor, do I have no further questions? Thank you, counsel. You will have an opportunity for rebuttal. Good morning. May I please the court? Your Honor, my name is Sean Jez. I'm here with my co-counsel Ann Cowles. Thank you for giving us the opportunity to address this court with regard to the issues before it in the Rios and Hamby matter. Let me begin by saying, first of all, that Bayer has failed to carry its burden in this case. The law in Illinois requires that a plaintiff have a well-pleaded factual allegations in their complaint. Plaintiffs have done that in the Rios and Hamby cases. Judge Mudge and Judge Brewer both, in their opinions, believe that plaintiffs had well-plaid allegations, and as a result of that, plaintiffs have met their prima facie burden of showing that this court, their courts had jurisdiction, the Illinois courts had jurisdiction over the Bayer defendants in this lawsuit. Once that burden has been met by the plaintiffs, it is the defendant's burden to overcome that prima facie showing by offering uncontroverted evidence that defeats the jurisdiction. Bayer has not done that. In fact, in our response to the motion dismissed, plaintiffs submitted an affidavit by a regulatory expert that laid out the jurisdictional facts and why the Illinois courts had jurisdiction over this matter. The defendant has failed to controvert any of those specific facts. So, the Russell Court here in the Illinois Supreme Court case of 2013 follows the reasoning that a suit arises that the plaintiffs have a well-pleaded factual allegations. That the specific jurisdiction in what I assume arises out of or relates to the defendant's contact in the forum. What the defendants want you to believe, and what we heard in their briefs and in the argument today, the only thing they talked about were the plaintiff's contacts with the state. The plaintiff's contacts are irrelevant with regard to specific jurisdiction for the defendants. This court must look at the defendant's contacts with the state. And what contacts did these defendants have with the state? Well, we've laid those out. First of all, they did clinical trials in Illinois. Pivotal clinical trials. Illinois was one of eight states where the first trials were done in order to have this medical device approved by the FDA for safety and effectiveness reasons. Only one of eight states. That specifically related to this product. The second was the marketing. Bayer came to Illinois specifically to create its consumer awareness campaign. It was a pilot program to raise awareness in Chicago and to test the success of direct-to-consumer marketing with radio, print, direct mail, regarding its e-sure product. That's where they began their marketing campaign. They went out in the Chicago area and tested it to determine whether or not they could use that marketing strategy throughout the United States for plaintiffs everywhere in the United States. They started in Chicago, in Illinois. They didn't start that program in California, where they also developed the product. But they did this here in Illinois. And based on that marketing program, specifically that marketing program, they went out to the other states and marketed their product where our plaintiffs, Illinois and non-Illinois plaintiffs, saw that marketing and relied upon that to have this device implanted in their bodies, which then caused them their harm. The third connection, direct connection, is the e-sure accreditation program. What the e-sure accreditation program was a training program for physicians in order to show them how to put this device into women. It was a critical component that they used to train the consultant physician practices regarding patient education, staff training, customer service, systems development, scheduling, billing, and marketing. Where did they do that program? In Illinois. It was the basis of that accreditation program to train physicians that all doctors throughout the United States were trained with regard to this product. Was Illinois the only state where they did this accreditation program? Or was it something they did in multiple states? Illinois is where it began. That's where it started. From there it went elsewhere. Obviously the sales reps went to other facilities around the United States to train doctors. But the roots of that program started here in Illinois. Bayer specifically came to Illinois in order to do that. That's their specific contact with this court or with this state that gives this court jurisdiction with regard to their actions. So what Bayer would have you believe is that the BMS, the Bristol-Myers case, is the silver bullet. And that in June of 2017 when Bristol-Myers was decided by the United States Supreme Court, that that did away with all other specific jurisdiction. That's what they want you to believe. But in fact the very concept of arising from and related to jurisdiction with regard to a defendant's specific contact, that began way before that. The first cases on that were back in 1984 with the Helicopters Nationalis case in the United States Supreme Court and then in the Burger King case. Specifically in those cases is where the arising from or related to jurisdictional standard for specific jurisdiction began. The BMS case changes nothing of what has been going on for decades with regard to specific jurisdiction. What Bayer has done is now clings on to that decision because they believe the facts in the BMS case in California somehow alleviates their jurisdictional arguments or helps their jurisdictional arguments here in Illinois. But it doesn't. Let's talk about the differences between the BMS facts and the facts of this case. First of all, out of state claims don't come here claiming jurisdiction because Bayer generally marketed their product all over the United States. They come here because Bayer specifically centered their marketing strategy, started their marketing strategy here in Illinois with the consumer awareness campaign. They bring their case here because the eSure accreditation program started here in Illinois. And finally because of the clinical trials that were created and started here in Illinois in order to get this eSure device approved by the FDA. What the BMS case specifically says is that in California, in the Plavix case, they did the same thing. They went there and they did general selling of the product of the drug to the patients. But what they did not do in California, which they did here in Illinois, and that is they created a marketing strategy for the eSure device. They didn't do that in California with regard to Plavix. They worked on a regulatory approval of the eSure product here in Illinois. They didn't do that in BMS in the California case. That's the distinction, the factual distinctions of why the court in BMS did not find that there was specific jurisdiction with regard to Bristol Myers in California. What about this argument that 75% or 86% of the out-of-state plans have actually filed in other jurisdictions and therefore the courthouse doors are open, just not in Illinois? Well, here's the answer to that, Your Honor. First of all, those cases are all pending in those courts. Those cases have all been dismissed to begin with. So those plans no longer have a case in California. Their only lawsuit is here in Illinois. They filed first in Illinois, second of all. And third, it's not necessarily where the best jurisdiction may be, but it's where the plaintiff chooses to bring their lawsuit. Plaintiffs have chosen to bring their lawsuits here in Illinois. Going back to the Bristol Myers Square case, what the court must look at is the connected versus the unconnected activities. You don't focus on the plaintiff's contacts with the state.  And all the arguments that Behr brought here today were talking about, well, the plaintiffs didn't have their devices planted here. Their doctors weren't trained here. They didn't see advertising here in Illinois. They weren't warned by anybody in Illinois. But that's not what this court looks at. It looks at what the defendant did here in this state. If this court looks at one of the best examples of why this court has jurisdiction is looking at the M.M. case, the M.M. versus Glasgow-Smith-Klein, which is the M.M. case. And that case was decided on very specific facts. You had pivotal studies done in the state of Illinois that led to the specific jurisdiction. The defendant came to the state and did those pivotal studies just like Behr did here. What the defendants want you to do is they want you to say, well, the M.M. case doesn't apply here because, first of all, the court did not have the luxury of having the decision in the B.M.S. case. Well, again, like I said earlier, the facts of the B.M.S. case are specific with regard to that matter. What you have here is the Illinois court has already determined that under the very similar facts that we have here as an M.M., this court has specific jurisdiction with regard to the matter. The defendants in their briefs ironically want to say that the M.M. case is not binding on this court in any matter because it comes from a different district in the state. Yet they want you to look at cases from Missouri. They want you to look at other jurisdictions. But the case right here in front of us that was decided by this Supreme Court, they don't want you to look at it. They don't think it has any relevance here. They want to say that, well, because the B.M.S. was decided after that case, the M.M. shouldn't apply. I'm sorry, sir? Yes, sir. That was the first district. After the B.M.S. case was decided, the M.M. case went out to the United States Supreme Court on cert. After the B.M.S. case was decided, the U.S. Supreme Court denied cert with regard to the challenge that the defendants made on specific jurisdiction. Under the G.B.R. standard, the Supreme Court could have looked at the M.M. case and made a decision, but instead they decided not to look at it. And that basically asserts that this is good law still here in Missouri, excuse me, in Illinois with regard to the M.M. case. There are two other cases out of California that were decided right after the B.M.S. case that this Court believes that the B.M.S. case is important with regard to its decision on whether there is specific jurisdiction here. The Cortina case and the Debus case, which are both out of California, also looked at the B.M.S. case and based on the facts of those cases where there was actual clinical trials taking place in California with regard to those drugs, the Court decided there was specific jurisdiction in those matters. The other case that this Court should look at is the In Re Singenta Mass Tort Action case. In that case, Judge Herndon, in similar facts where there was pivotal studies, other marketing materials, the Court analyzed it and said that plaintiffs had sufficiently pledged jurisdictional facts showing that Singenta defendants purposely availed themselves of the benefits and protections of Illinois law. So you have an out-of-state defendant here, white bear, that comes to Illinois, uses its doctors, uses its facilities, and then claims that it doesn't have any jurisdiction in this state. It avails itself to the benefits of the state, yet it does not want to be held accountable for the actions that it makes and takes in this state. Finally, what I'd like to just wrap up by saying is that, and I've said this multiple times, the Court has to look at the contacts of the defendants in the case. It does not matter whether or not the plaintiffs were implanted here, whether they received their award here. The fact is that the defendants came to this state, they started their insurance renovation program, which the plaintiffs then and their physicians relied upon in order to implant their devices in them. They had the consumer awareness campaign, which was the ground roots marketing campaign, which was the start of all the marketing throughout the states. And the plaintiffs in Illinois and not in Illinois all relied upon that advertising. That's played in our complaint, that the plaintiffs relied upon that. And it started here in Illinois. And finally, the clinical trial, the pivotal trials, not only did they do the very first trial here in Illinois, they also continued to this day to do post-marketing studies in the state of Illinois to determine the effectiveness of their product and to determine that whether their product is causing problems or not. Do your Honors have any additional questions? Thank you, Counselor. All right. Thank you. I just briefly want to respond to some of those points, Your Honor. First, plaintiffs do bear the burden of demonstrating personal jurisdiction here. Our argument is that the allegations as they've made in their complaint are not sufficient, that they have not carried their burden based on the allegations they've made. My second response would be a regulatory expert is not a judge. The question of whether there's specific personal jurisdiction here based on the allegations of those complaints is not for an expert other than the judicial experts that are before me. Third, BEAR engaged in many activities in Illinois. But the question of specific personal jurisdiction is not about the plaintiff's activities in isolation or about the defendant's activities in isolation. It is about whether the plaintiff's specific claims are linked to BEAR's activities, sufficiently linked to BEAR's activities in Illinois, and whether the plaintiff's specific claims are linked to the plaintiff's specific claims in Illinois. And so it is relevant that the eShore device was not manufactured in Illinois when the claim is that there's a manufacturing defect. When the claim is that the advertising that the plaintiffs viewed was not sufficient, was engaged in misrepresentations, it is relevant that none of the advertising the plaintiffs viewed was advertising in Illinois. The clinical trials that were engaged in, the advertising that was engaged in here and in many, many other states is not what forms the basis of the plaintiff's specific claims here, and that's why it's insufficient for personal jurisdiction. Bristol-Myers was decided precisely because courts, lower courts, were not following the Supreme Court's case law about the required tight link between a claim and a defendant's activities in a forum state in order to give rise to case-linked specific jurisdiction. It's not just a continuation of a long line of cases that was decided for no reason. The court was calling out the lower courts for failing to understand the tightness of the link that it was requiring. The Southern District of Illinois and the District of Missouri, who are federal district courts in this case, heard these same arguments from the plaintiffs in cases that are analogous to this involving the eShore device and in the Zeralto cases and rejected them, relying on the Supreme Court's teachings in Bristol-Myers. My friend also indicated that all of the cases that had been dual filed in California had been dismissed. Our understanding is that is not the case. Eighteen California cases were dismissed by dual filers after we made this argument in the trial court, but not all of the cases were dismissed. So it's our understanding that there are still many, many tens of cases in Hanby and Rios that are dual filed in California. Again, the First District is not binding on you. I understand also the Southern District of Illinois and Missouri District Courts are not binding on you. We cite you to those cases for the persuasiveness of the reasoning that we believe is there. Finally, decisions on certiorari by the Supreme Court are not binding. That is absolutely crystal clear black letter law. The court hears about 60 to 70 cases a year at most. It quite frequently denies certain cases where it later might engage on the same legal issue. That is not precedential that the court denied certs from the MM decision. My opponent cites the Cortina and DuBois cases from California. Those are cases which specifically apply the standard of but-for causation, which Illinois courts have rejected and we respectfully submit Federal courts have rejected as sufficient to establish personal jurisdiction. The last point I'll make is the suggestion that you look in isolation at a defendant's activity and determine from those activities whether a link is sufficient for specific jurisdiction is wrong and inconsistent with this court's, with Illinois courts, and with Supreme Court jurisprudence on specific personal jurisdiction. What you must find is the specific claim, the elements of the claims by the plaintiffs have a link to the defendant's activities in the State, and we respectfully submit to you that they do not in this case, and you should reverse the trial court's rulings denying our motions for lack of jurisdiction over the out-of-State plaintiff's claims. Does the Court have further questions for me? Thank you very much. Thank you, Counsel. Appreciate all of your arguments, and we'll take this matter under advisement and render a decision due course.